IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARY JEAN CARTER,               :
                                :
      Plaintiff,                :
                                :
vs.                             :        CIVIL ACTION 11-0682-M
                                :
MICHAEL J. ASTRUE,              :
Commissioner of Social Security,:
                                :
      Defendant.                :


MEMORANDUM OPINION AND ORDER


      In this action under 42 U.S.C. § 405(g), Plaintiff seeks

judicial review of an adverse social security ruling which

denied a claim for disability insurance benefits (Docs. 1, 15).

The parties filed written consent and this action has been

referred to the undersigned Magistrate Judge to conduct all

proceedings and order the entry of judgment in accordance with

28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 22).  Oral

argument was heard on August 27, 2012.  Upon consideration of

the administrative record, the memoranda of the parties, and

oral argument, it is **ORDERED** that the decision of the

Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

      This Court is not free to reweigh the evidence or

substitute its judgment for that of the Secretary of Health and

1

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239
(11th Cir. 1983), which must be supported by substantial
evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The
substantial evidence test requires "that the decision under
review be supported by evidence sufficient to justify a
reasoning mind in accepting it; it is more than a scintilla, but
less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918
(11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205
(D. Md. 1982).

At the time of the administrative hearing, Plaintiff was
forty-five years old, had completed a tenth-grade education
(Doc. 17), and had previous work experience as a convenience
store clerk and service station clerk (Tr. 35). In claiming
benefits, Plaintiff alleges disability due to degenerative
disease of the lumbar spine, restless leg syndrome, GERD,
anemia, fatigue, fibromyalgia, osteoarthritis, somatoform
disorder, and pain disorder (Doc. 17).

The Plaintiff filed a protective application for disability
benefits on August 27, 2009 (Tr. 119-25). Benefits were denied
following a hearing by an Administrative Law Judge (ALJ) who
determined that although she could not perform her past relevant
work, there were unskilled, light jobs existing in the national

economy which Carter could perform (Tr. 13-23).  Plaintiff requested review of the hearing decision (Tr. 7-9) by the Appeals Council, but it was denied (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Carter alleges that:  (1) The ALJ did not properly consider the opinions of her treating physicians; (2) the ALJ did not properly consider her complaints of pain; (3) the ALJ did not consider the combination of her impairments; and (4) the ALJ should have ordered consultative examinations (Doc. 15).  Defendant has responded to—and denies—these claims (Doc. 19).  The relevant evidence of record follows.

On July 5, 2008, Carter was admitted to D. W. McMillan Memorial Hospital for chest pain, tachycardia, and elevated blood pressure (Tr. 237-43).  Symptoms resolved and appeared to be related to medicine taken for restless leg syndrome; Plaintiff was released two days later in stable condition.

On May 12, 2009, Carter was admitted to McMillan Hospital for a week following a syncopal episode at home; at admission, she was also suffering from dehydration and hyperkalemia (Tr. 244-69).  Examination demonstrated no cardiac dysfunction (Tr. 244); she had full range of motion in her extremities (Tr. 247).

3

A radiology report of the thoracic spine demonstrated twelve rib bearing thoracic vertebral segments, relatively well maintained with no acute fracture or other suspicious bone lesion identified; intervertebral disk spaces were relatively well preserved and soft tissues demonstrated no acute abnormality (Tr. 251). At discharge, Plaintiff was diagnosed to have had erosive gastritis (thought to be related to therapy for chronic back syndrome), refractory diarrhea with hyperkalemia alternating with hypokalemi, anemia, chronic back syndrome, and hypertension. Though Carter was expected to miss work for four-to-five days, she was instructed to return to routine activity as tolerated.

Plaintiff was seen by Surgical Associates of South Alabama on May 16, 2009 for her syncopal episodes; on that date, she was in no acute distress and was diagnosed with anemia (Tr. 274; *see generally* Tr. 270-74). Following the administration of an EGD and colonoscopy, a letter written on June 18 stated that there were no abnormalities in Carter's colon though she had erosive gastritis for which she was given medication (Tr. 274).

Dr. Thomas Fitzgerald examined Plaintiff on June 18 and August 20, 2009 for iron deficiency anemia (Tr. 277-78). On both occasions, she was in no acute distress, had good muscle

tone, and full strength in all extremities.  Iron was prescribed.

On February 18, 2008, Carter was seen at the Flomaton Medical Center for complaints of severe low back pain; Plaintiff stated that her pain was a six on a ten-point scale, though it had been at a ten (Tr. 290; *see generally* Tr. 282-306).  Dr. John Vanlandingham noted that Plaintiff had decreased straight leg raising; there was no numbness in her legs though there was very faint numbness and paresthesias in her lower extremities (Tr. 290).  Carter was given samples of Diovan[1] and prescriptions for Lortab,[2] Skelaxin,[3] and Medrol; though she could not work, she was instructed to do back exercises.  Plaintiff was seen again on March 11, stating that although the pain had gotten a little bit better, it was now worse; it was noted that she was obviously severely kyphotic and had elevated blood pressure (Tr. 289).  Carter reported that the Lortab dropped her pain from a ten to a five, but that it never went completely away; the doctor re-prescribed the Lortab.  On April 22, Plaintiff

---

[1] **Error! Main Document Only.***Diovan* is used to treat hypertension. *Physician's Desk Reference* 1841-43 (52nd ed. 1998).

[2] **Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[3] **Error! Main Document Only.***Skelaxin* is used "as an adjunct to rest, physical therapy, and other measures for the relief of discomforts associated with acute, painful musculoskeletal

reported that medication eased her pain to a three on a ten-point scale; the doctor noted that she was very tender in the lower back though there was no tingling or numbness in the legs (Tr. 289).  Carter's blood pressure was very high and she had palpable muscle spasm in the lower back; straight leg raising was not diminished.  Plaintiff refused to be admitted to ICU for heart monitoring; prescriptions were written for Lortab, Flexeril,[4] and Clonidine.[5]  On July 14, 2008, there is a note that Carter was seen in the hospital after being admitted for an adverse medication reaction and restless legs; she had minimal tenderness in the back (Tr. 288).  Over the next month, she had both big toenails removed as there was evidence of tinea unguium; there were no apparent complications (Tr. 287).  On October 9, Plaintiff complained of swelling in her left leg; she reported that she had only taken over-the-counter meds for her pain (Tr. 287).  The doctor noted a little edema in the left lower extremity.  At her next examination, eleven days later, the doctor noted that the left leg edema had been resolved and that he was seeing Carter for what appeared to be a chronic

conditions." *Physician's Desk Reference* 830 (52nd ed. 1998).

[4]***Error! Main Document Only.****Flexeril* is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions." *Physician's Desk Reference* 1455-57 (48th ed. 1994).

right ankle sprain (Tr. 286).  On March 9, 2009, Plaintiff
reported that her headaches were fairly stable; her blood
pressure was stable and she had mild tenderness in the lower
back (Tr. 286).  There was tenderness in the epigastrium but no
right upper quadrant pain; Dr. Vanlandingham's impression was
GERD and uncontrolled hypertension.  On April 6, 2009, Carter
was seen for probable irritable bowel syndrome and GERD; blood
pressure was noted to be stable (Tr. 285).  On May 6, Plaintiff
was again having stomach problems; her Ambien[6] prescription was
changed to Trazodone[7] (Tr. 285).  Three weeks later, the doctor
noted that Carter had been hospitalized with gastritis; she also
had severe lower back pain for which Darvocet[8] was prescribed
along with physical therapy (Tr. 285).  Vanlandingham noted
tenderness in the mid lower back and that her blood pressure had
been stable.  On June 23, it was noted that x-rays had confirmed
that Carter had degenerative disk disease; the doctor stated
that she was not stable for work (Tr. 284).  Her gastritis was

---

[5]*Clonidine* is used to treat hypertension.  **Error! Main Document Only.***Physician's Desk Reference* 835-36 (62nd ed. 2008).

[6]*Ambien***Error! Main Document Only.** is a class four narcotic used for the short-term treatment of insomnia.  *Physician's Desk Reference* 2799 (62nd ed. 2008).

[7]**Error! Main Document Only.***Trazodone* is used for the treatment of depression.  *Physician's Desk Reference* 518 (52nd ed. 1998).

[8]**Error! Main Document Only.**Propoxyphene napsylate, more commonly known as Darvocet, is a class four narcotic used "for the relief of mild to moderate pain" and commonly causes dizziness and sedation.

improved; he took her off the Diovan and prescribed Ultram[9] for pain.  On July 15, 2009, Carter had some mild numbness and paresthesias down into her left leg; she was tender in the mid lower back, L5-S1 area (Tr. 284).  Straight leg raise was equal on the right and left; Dr. Vanlandingham noted that he wanted her to reduce her use of Lortab.  On August 12, it was noted that Carter was very tender in the lower back, with some possible radiation of pain down the left leg; there was mild weakness of the left leg (Tr. 283).  Straight leg raises were normal; Lortab was increased.  On September 3, lab results showed that Plaintiff had iron deficiency anemia; Carter reported that her back pain was better though there was tenderness (Tr. 283).  Straight leg raising was slightly decreased on the left.  Five days later, Plaintiff complained of burning pain in the lower extremities; Vanlandingham noted that she appeared to have some spontaneous blood vessels which had ruptured with small hematomas (Tr. 282).  Blood pressure was noted to be stable; there was pain and tenderness in the left calf.

Carter was admitted to McMillan Hospital on October 5, 2009

---

*Physician's Desk Reference* 1443-44 (52nd ed. 1998).
  [9]**Error! Main Document Only.***Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's*

for two nights for continuous nausea, vomiting, and diarrhea (Tr. 307-12). Her discharge diagnosis was gastroenteritis, chronic back syndrome, and hypokalemia.

On February 12, 2008, Carter was seen at the Emergency Room at McMillan Hospital for complaints of low back pain; she had pain in straight leg raising of both legs at eighty degrees (Tr. 360-67; *see generally* Tr. 313-78). On February 18, Plaintiff underwent a lumbar spine series which showed mild spurring at L1, L2, L3, and L5 levels, characterized as degenerative changes (Tr. 358-59). On May 7, Plaintiff had a non-contrast Lumbar MRI that demonstrated that she had mild degenerative changes in the lower thoracic and lumbar spine with no significant disk protrusion, spinal canal, or foraminal stenosis noted (Tr. 356-57). Carter underwent an arterial ultrasound of her lower extremities on July 1; she had no significant arterial disease (Tr. 354-55). On October 3, Plaintiff was seen for complaints of lower back pain; it was noted that she was in no acute distress, that she had negative straight leg raising on both the right and the left and that her diagnosis was acute myofascial strain and that she had chronic low back pain (Tr. 313-20). On August 28, 2009, Carter was seen for chronic low back pain; she

---

*Desk Reference* 2218 (54th ed. 2000).

was told to rest and to continue taking her prescribed
medications though she was given a percocet[10] (Tr. 321-28).  Two
days later, Plaintiff returned to the ER for nausea and
vomiting; back pain was noted and she was given Phenergan[11] (Tr.
329-336).  On October 9, 2009, Carter was seen for nausea and
vomiting for which she was given Phenergan (Tr. 370-78).  On
October 30, Plaintiff went to the ER with complaints of a
headache and vomiting (Tr. 337-51).

On September 28, 2009, Carter went to the Flomaton Medical
Center for irritable bowel syndrome, abdominal pain, and
intermittent diarrhea (Tr. 396).  There were also complaints of
insomnia; Dr. Vanlandingham noted that her back was fairly
stable.  She was also seen on October 5 and 15 for refractory
vomiting (Tr. 395-96).

Plaintiff was admitted to the McMillan Hospital on October
15-17, 2009 for intractable nausea and vomiting (Tr. 381-93).

Carter was examined at Berryhill Orthopaedics on March 20,
2008 for evaluation of low back pain (Tr. 400; *see generally* Tr.
400-07).  Her back was noted to be very stiff with tenderness at

---

[10] *Percocet*  is used for the relief of moderate to moderately
severe pain.  **Error! Main Document Only.***Physician's Desk Reference*
1125-28 (62nd ed. 2008).
     [11] **Error! Main Document Only.***Phenergan* is used as a light sedative.
*Physician's Desk Reference* 3100-01 (52nd ed. 1998).

L4-5; she could only barely touch her knees with forward flexion.  Straight leg raising was negative.  Dr. Peter M. Szymoniak's assessment was that Plaintiff had facet arthritis, episodic in nature; he suggested Celebrex[12] rather than Lortab and Skelaxin.  On May 1, 2008, the doctor noted that although she had no neurologic findings, Carter had continued back pain radiating to both hips; her back was very stiff and there was muscle spasm palpable in her back (Tr. 406).  Two weeks later, Dr. Szymoniak noted that a recent MRI revealed multiple level degenerative disc disease at the thoracolumbar junction and mild facet arthritis at L4-5 and L5-S1; there was no stenosis or disc herniation (Tr. 405).  It was the doctor's opinion that surgery would not be of benefit to Carter; he encouraged her to start walking daily and increasing her physical activity though it was his opinion that she would have to learn to live with some degree of intermittent chronic back pain (Tr. 405).  On November 13, Plaintiff was seen for pain and swelling in her left leg; edema was noted in the left leg below the knee but there was no demonstrable localized tenderness (Tr. 404).  On December 11, Szymoniak noted trace edema in her left foot with some

---

[12]**Error! Main Document Only.***Celebrex* is used to relieve the signs and symptoms of osteoarthritis, rheumatoid arthritis in adults, and for the management of acute pain in adults.  *Physician's Desk*

11

tenderness in the midfoot; she was able to dorsiflex the ankle twenty degrees and plantar flex forty-five degrees (Tr. 403).  A venous and arterial Doppler were both normal; x-rays of the left foot showed osteoarthritis in the talonavicular joint and to a lesser extent at the navicular cuneiform joint.  The doctor's impression was osteoarthritis in the midfoot; he also noted that she may need a more sedentary occupation and recommended a good walking shoe and knee-high elastic socks.  On July 2, 2009, Carter was noted to have stiffness and palpable muscle spasm throughout the lumbar spine, though there was no localized tenderness; she had pain with flexion and extension of more than twenty degrees in her back (Tr. 402).  The assessment was degenerative disk disease with painful muscle spasm, but no radicular pain.  On August 27, Dr. Szymoniak noted that Carter was walking with a cane; on exam, she had tenderness in the midline and the paraspinous muscles from T12 to L5 (Tr. 401).  She had a very stiff back; forward flexion was very painful.  Straight leg raising was negative.  On November 12, the doctor noted generalized tenderness from L3 to the sacrum bilaterally; mild muscle spasm was palpable (Tr. 400).  He ordered refills of

_Reference_ 2585-89 (58th ed. 2004).

her Robaxin.[13]

Records from the Atmore Community Hospital on November 23, 2009 report that Plaintiff had lost thirty-five pounds and generally looked ill (Tr. 409). On December 14, Carter had mild epigastric tenderness (Tr. 408).

McMillan Hospital records show that Plaintiff was admitted on December 18, 2009 with severe substernal chest pain, tightness in her chest and chest wall pain, and hyperventilation (Tr. 411-19). She was discharged, after two nights, completely improved; there was no evidence of mitral valve prolapse syndrome and no abdominal tenderness.

In a note from the Flomaton Medical Center on December 29, Plaintiff reported anxiety, continued back pain, shortness of breath, and a recent hospitalization for severe nausea (Tr. 420). Dr. Vanlandingham noted back tenderness though her abdomen and chest were clear; he also noted that she was walking with a cane. He re-prescribed Lortab.

Plaintiff was seen on November 12 by Dr. Craig Cartia who noted that she used a cane for support but had good range of motion (hereinafter *ROM*) in the cervical spine in all quadrants

---

[13]**Error! Main Document Only.***Robaxin* "is indicated as an adjunct to rest, physical therapy, and other measures for the relief of discomforts associated with acute, painful musculoskeletal

and decreased ROM in the lumbar spine (Tr. 425-28).  Plaintiff
complained of pain at a level ten on a ten-point scale.  Motor
was 5/5 in all extremities; she had negative straight leg
raising.  The doctor's impression was that Carter had lumbar
degenerative disk disease and lumbar facet arthropathy.  It was
Cartia's opinion that "the magnitude of the patient's complaints
would seem to be out of proportion with her exam today and her
general radiographic studies" (Tr. 426).  An MRI of the lumbar
spine without contrast on November 25, 2009 demonstrated no
significant change compared to an MRI done eighteen months
earlier; both demonstrated degenerative changes (Tr. 422).  On
January 5, 2010, Dr. Cartia indicated that they would try
physical therapy though stating that he was not sure that she
was going to be a candidate for any type of injection therapies
(Tr. 421).

ER records from McMillan Hospital show that Plaintiff was
seen on November 8, 2009 for back pain and a headache; she had
run out of pain medications the day before (431-39).  She was
given Lortab, Benadryl, and Toradol.[14]  On December 12, Carter
underwent a small bowel follow-through series which demonstrated

conditions."  *Physician's Desk Reference* 2428 (52nd ed. 1998).

no significant small bowel abnormality (Tr. 442-43).  On New Year's Eve 2009, Carter complained of chest pain; an echocardiogram divulged no valvular abnormalities or intracavitary masses (Tr. 440-41).  On January 4, 2010, Carter was seen for complaints of abdominal pain, nausea, and vomiting; an abdominal ultrasound showed a normal liver, pancreas, aorta, spleen, and pair of kidneys (Tr. 429-30).  On February 26, 2010, Plaintiff was seen at the ER for a headache and vomiting for which she was given medication (Tr. 448-56).

On April 16, Carter was examined by Psychologist Robert DeFrancisco who noted that Plaintiff appeared older than her stated age, saying that she walked with a cane and appeared very frail (Tr. 457-62).  He administered the Millon Behavioral Diagnostic which revealed a very agitated emotional state; she had pervasive anxiety and depression with feelings of misfortune and general pain discomfort.  DeFrancisco's diagnostic impression was pain disorder and somatoform disorder; he indicated that she had average intelligence.  It was the Psychologist's conclusion that she "showed many signs of adjustment difficulty especially her ability to cope with her

---

[14]*Toradol* is prescribed for short term (five days or less) management of moderately severe acute pain that requires analgesia at the opioid level. *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

stress and her physical pain" and that she should receive
psychiatric supportive therapy (Tr. 459).  DeFrancisco completed
a questionnaire which indicated that is was his opinion that
Carter was markedly limited in her ability to perform activities
of daily living, maintain social functioning, understand, carry
out, and remember instructions in a work setting, and perform
simple and repetitive tasks in a work setting; he further
indicated that she would frequently be deficient in
concentrating and performing her tasks (Tr. 460-61).  He further
indicated that medication would cause her to be fatigued.

On March 25, 2010, Dr. Szymoniak noted paraspinous muscle
spasm throughout the thoracic and cervical spine with the
ability to rotate only fifty degrees in either direction; there
was no anterior cervical tenderness (Tr. 464).  Straight leg
raising was negative; she had palpable muscle spasm throughout
the lumbar spine.  It was the doctor's opinion that Carter
probably had some degree of fibromyalgia as well as mechanical
neck and back pain from degenerative disk disease.  Szymoniak
prescribed Robaxin and encouraged Plaintiff to be active.  On
September 23, the doctor noted muscle spasm throughout the
lumbar spine and that she was tender at L4-5; she had left-sided
spasm more than on the right (Tr. 463).  She had very tight

16

hamstrings though hip ROM was not painful.  He found no neurologic deficits.

On May 25, Carter was admitted to McMillan Hospital for chest pain (Tr. 465-77).  During her two-night stay, she had a chest x-ray which demonstrated no acute cardiopulmonary process and an echocardiogram which was, essentially, normal; an EKG showed nonspecific T-wave changes.  At discharge, she was stable, with the following diagnosis:  hypokalemia was corrected; chest wall pain; no evidence of ischemic heart disease at this time; GERD; depressive reaction; and chronic back syndrome with muscle spasm.

On January 11, 2010, Carter was seen by Dr. Vanlandingham at the Flomaton Medical Center who noted that she was having very little trouble with her heart, as evidenced by recent tests, and that he did not think that any treatment was warranted (Tr. 485).  On February 15, Plaintiff was seen for insomnia, anxiety, leg cramps, and back pain for which he prescribed Trazodone, Buspar, Clonidine, and Lortab. (Tr. 484).  He gave her a disabled parking permit slip.  He noted that there was no numbness or paresthesias in her legs and that grip and strength were good.  Carter complained of abdominal pain and minimal heartburn; she had no chest pain but was tender in the

back.  Straight leg raising was slightly decreased on the left.
The doctor saw Plaintiff again on April 6 for crampy pain in the
lower extremities; she was very tender in the lower back (Tr.
484).  Sensation was good and straight leg raise and reflexes
were normal; he thought she might have neuropathy for which he
prescribed Neurontin.[15]  On May 5, 2010, Carter complained of
chronic back syndrome, pain in the buttocks and lower
extremities, worse on the left; restless leg syndrome was stable
with medication (Tr. 484).  She had back tenderness; her
extremities were normal.  On June 7, Dr. Vanlandingham noted
that Plaintiff's heart and chest were clear and that there was
no tenderness in the chest wall, arrhythmia, clicks or murmurs;
there was some mild tenderness in the epigastrium (Tr. 483).  On
July 8, Carter complained of back pain and was very tender in
the lower back; her stomach was fairly stable though there was
mild tenderness in the abdomen (Tr. 483).  The doctor noted some
slight curvature of the back; extremities were normal.  On
August 17, Plaintiff complained of pain and early morning
stiffness in her hands and joints; the doctor noted that she had
gained some weight and was in better spirits (Tr. 482).
Extremities were normal and straight leg raise was fairly

---

[15]**Error! Main Document Only.**_Neurontin_ is used in the treatment of

stable; she was very tender in the lower back.  On October 5,
Carter complained of foot pain, chronic pain, and depression;
her exam was, essentially, normal (Tr. 482).

On August 26, Dr. T. J. Fitzgerald saw Plaintiff for iron
deficiency anemia (Tr. 486).  She was to continue taking iron
and he would continue to monitor her.

On November 10, 2010, Carter was seen by Dr. Vanlandingham
at the Flomaton Medical following a fall in the bathroom,
hurting her back; she also complained of leg cramps and restless
legs (Tr. 488).  Plaintiff was slightly anemic; otherwise, she
was doing fairly well though she still had problems with her
lower back, necessitating that she walk with a cane.  On
December 6, Plaintiff complained of reflux symptoms, chronic
back pain, and restless legs though she was feeling good; her
lower back was tender and there was some mild weakness in the
lower extremities (Tr. 488).  She was encouraged to exercise.

Records from McMillan Hospital show that Carter was seen
for physical therapy from January 8, 2010 through February 8,
2010 during which she received therapeutic exercises; her short
and long term goals were partially met (Tr. 505-22).

On January 5, 2011, Dr. Szymoniak completed a physical

---

partial seizures.  *Physician's Desk Reference* 2110-13 (52nd ed. 1998).

capacities evaluation (hereinafter *PCE*) stating his opinion that
Plaintiff was capable of sitting, standing, and walking, each,
for two hours at a time and able to sit for six hours and stand
and walk four hours, each, during an eight-hour day (Tr. 523).
Carter would be able to lift up to ten pounds frequently and
twenty pounds occasionally and could carry up to five pounds
frequently and twenty pounds occasionally.  Plaintiff would be
able to use her hands and feet for repetitive actions and would
be able to occasionally bend, squat, crawl, climb, and reach;
she would be mildly restricted in being at unprotected heights,
being around moving machinery, being exposed to marked changes
in temperature and humidity, driving, and being exposed to dust,
fumes, and gases.

On February 2, 2011, Dr. John Vanlandingham wrote a "to
whom it may concern" letter which stated that because of
progressively increasing back pain, Carter could not stand or
sit for more than twenty minutes, lift more than five pounds for
any period of time, and could not bend, twist or stoop or turn
without significant pain (Tr. 524-25).  She could bend forward
only forty degrees from the vertical position and could not
squat without falling.  It was the doctor's opinion that Carter
was "unable to perform any routine job functions with her

training and would suggest she is disabled" (Tr. 525).

At the evidentiary hearing, Carter testified that she had worked as a convenience store clerk and service station clerk (Tr. 35; *see generally* Tr. 29-55).  She stated that she could not work any more because she could not squat or stand for very long because of back pain; she took Lortab for the constant pain (Tr. 35-37).  She also had restless leg syndrome, fibromyalgia, and anemia (Tr. 37).  Medication helped Plaintiff sleep for up to five hours a night; otherwise, she only got three hours sleep because of her legs and back pain (Tr. 38).  She could only sit and stand for about fifteen minutes each; she could walk to the mailbox and back before getting out of breath (Tr. 38-39).  On a pain scale of ten, her pain ranged from three to nine (Tr. 39-40).  Carter testified that, as far as chores, she made up the bed; she could vacuum, but then had to rest (Tr. 42).  She could dress herself and take care of her personal needs; she could not bend over or crawl (Tr. 42-43).  Plaintiff stated that no physician had prescribed that she use a cane; one did recommend a wheelchair, but she has not gotten it yet (Tr. 45).  Carter said that she had had a heart attack in 2008 and was treated at McMillan hospital; her doctors have given her a clean bill of health as far as her heart (Tr. 46-47).  Her anemia made her

21

weak and caused her to pass out (Tr. 47).

In the administrative decision, the ALJ summarized the medical evidence before determining that although she could not return to her past relevant work, Carter had the residual functional capacity (hereinafter *RFC*) to perform a reduced range of light work, naming specific jobs which she was capable of doing (Tr. 13-23).  In reaching that decision, the ALJ found that Plaintiff's testimony regarding her abilities was not entirely credible (Tr. 18, 20); she also rejected the conclusions of Psychologist DeFrancisco and Dr. Vanlandingham as well as some of the specific findings of Dr. Szymoniak (Tr. 21). The ALJ relied on the conclusions of the vocational expert,[16] who testified at the evidentiary hearing, in determining that there were specific jobs which Carter could perform (Tr. 23).

Before getting to the claims brought in this action, the Court notes that Plaintiff filed eighty-one pages of additional evidence with the Court (*see* Doc. 18).  Though Plaintiff acknowledges that the new evidence would be sent, no arguments are made as to why it is relevant or why the Court should consider it (Doc. 17, pp. 6-7).

Nevertheless, it is noted that "[a] reviewing court is

_____

[16]The vocational expert's testimony has not been summarized herein

limited to [the certified] record [of all of the evidence
formally considered by the Secretary] in examining the
evidence." *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir.
1985).  The Court further notes, however, that the Eleventh
Circuit Court of Appeals has further stated the following with
regard to this issue:

> Sentence six allows the district court to
> remand to the Commissioner to consider
> previously unavailable evidence; it does not
> grant a district court the power to remand
> for reconsideration of evidence previously
> considered by the Appeals Council.  Because
> evidence properly presented to the Appeals
> Council has been considered by the
> Commissioner and is part of the
> administrative record, that evidence can be
> the basis for only a sentence four remand,
> not a sentence six remand.

*Ingram v. Commissioner of Social Security Administration*, 496
F.3d 1253 (11th Cir. 2007).  To make a determination of remand,
"the claimant must establish that:  (1) there is new,
noncumulative evidence; (2) the evidence is 'material,' that is,
relevant and probative so that there is a reasonable possibility
that it would change the administrative result, and (3) there is
good cause for the failure to submit the evidence at the
administrative level." *Caulder v. Bowen*, 791 F.2d 872, 877

---

as it was unnecessary based on the claims raised in this action.

(11th Cir. 1986).

The Court has reviewed the newly-submitted evidence and finds that it is not material in that there is not a reasonable possibility that it will change the administrative result. While it is new evidence, the Court does not find that it is noncumulative.  The Court does not find that it provides evidence that is materially different from the evidence that already appears in the record.  The Court further finds that no showing has been made that the evidence relates back to the period under review by the ALJ.  For these reasons, the Court will not summarize the newly-submitted evidence herein and will not consider it for purposes of evaluating the ALJ's decision.

In bringing this action, Carter has claimed that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's physicians.  Specifically, Plaintiff asserts that the ALJ improperly rejected the conclusions of Drs. Vanlandingham and Szymoniak; Carter has also asserted that the ALJ improperly rejected the conclusions of Psychologist DeFrancisco, a one-time examiner (Doc. 15, pp. 10, 13, 14-15).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to

reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[17] *see also* 20 C.F.R. § 404.1527 (2012).

The ALJ rejected Dr. Vanlandingham's conclusions in his February 2, 2011 "to whom it may concern" letter as "inconsistent with the objective medical evidence in the record and [] inconsistent with his own treatment notes;" the ALJ noted that "his treatment notes document only references to subjective complaints without objective documentation to support the allegations" (Tr. 21; *cf.* Tr. 524-25).  The ALJ specifically noted that the doctor "appears to concede this point in his letter when he comments that the claimant's subjective complaints and limitations 'would suggest' that she is disabled" (Tr. 21).

In reviewing the medical evidence, the Court notes that Dr. Vanlandingham's records show that the objective tests administered to Carter consisted of x-rays on June 23, 2009 (Tr. 284) and some heart tests on January 11, 2010 (Tr. 485; *see generally*, Tr. 282-306, 395-96, 420, 481-85, 488).  The records show that the doctor examined Plaintiff for a wide variety of

_____

[17]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1,

complaints (twenty-six visits over a thirty-three month period),
but that no impairment was consistently problematic.  For
example, on October 9, 2008 Carter complained only of left leg
swelling, but she had only had to take over-the-counter meds for
her pain (Tr. 287); on September 3, 2009, iron deficiency anemia
was the concern while Plaintiff's back pain was better (Tr.
283).  Blood pressure was characterized as stable five days
later (Tr. 282); Dr. Vanlandingham characterized Carter's back
as fairly stable on September 28 (Tr. 396).  On January 11,
2010, the doctor noted that she was having very little trouble
with her heart and treatment was not warranted (Tr. 485).  The
Court further notes that, generally, Vanlandingham's treatment
was comprised of prescribing medication.

    The ALJ rejected some of Dr. Szymoniak's conclusions in his
PCE; specifically, the ALJ found no "evidence in the record to
support Dr. Szymoniak's opinion that the claimant would be
limited to carrying only 5 pounds frequently or sitting,
standing and walking for only 2 hours at a time" (Tr. 21; *cf.*
Tr. 523).[18]  The ALJ also noted that although the doctor had
reported that Carter had quit driving and used a cane because of

---

1981.
        [18]The Court will focus only on Plaintiff's ability to carry five
pounds as the ability to sit, stand, and walk for two hours at a time

her impairments, he found no medical support for either (Tr. 21).

In reviewing Dr. Szymoniak's records, the Court notes that, on May 1, 2008, the doctor found no neurological deficits in Carter's back and although an MRI confirmed degenerative disk disease in the thoracolumbar spine and mild arthritis in the lumbar spine, there was no stenosis or disc herniation (Tr. 405-06). On May 15, 2008, he characterized her chronic back pain as intermittent and encouraged her to walk daily and increase her physical activity (Tr. 405). On September 23, 2010, Szymoniak again noted no neurological deficits (Tr. 463). Nowhere in the two years that he treated Carter does the Orthopedic doctor note any sort of upper body strength limitations or an inability to carry more than five pounds. The notes of Dr. Cartia, on the other hand, demonstrated full motor ability in all extremities in November 2009 (Tr. 426); Cartia also noted that an MRI study that month showed no significant changes from an MRI completed eighteen months earlier (Tr. 422).

The ALJ also rejected the mental health limitations found by Psychologist DeFrancisco, first finding them inconsistent with the other objective documents of record (Tr. 21). The ALJ

is not inconsistent with the ALJ's RFC finding for Carter.

went on to note that his conclusions were "internally inconsistent with the findings noted in the narrative report;" the ALJ further noted that the Psychologist had indicated that Carter had shown improvement after a change in her psychotropic medications (Tr. 21; *cf.* Tr. 470, 482).

The Court notes that DeFrancisco's conclusions are focused on her complaints of pain (Tr. 457-62); the Court further notes that the ALJ cited Dr. Cartia's opinion that Plaintiff's pain complaints were not supported by objective medical evidence (Tr. 21; *cf.* Tr. 426). As such, the Psychologist's conclusions are based on a faulty premise. The Court also agrees with the ALJ's finding that DeFrancisco's medical notes are internally inconsistent; for example, he noted that Carter was "cooperative, friendly and interactive" though she had "a very flat blunted affect" and was "not very spontaneous in her speech" (Tr. 458).

The Court has reviewed the medical records of Drs. Vanlandingham and Szymoniak and Psychologist DeFrancisco and finds substantial support for the ALJ's rejection of their conclusions.

Carter has also claimed that the ALJ did not properly consider her complaints of pain (Doc. 15, pp. 11-14). The

28

standard by which the Plaintiff's complaints of pain are to be
evaluated requires "(1) evidence of an underlying medical
condition and either (2) objective medical evidence that
confirms the severity of the alleged pain arising from that
condition or (3) that the objectively determined medical
condition is of such a severity that it can be reasonably
expected to give rise to the alleged pain." *Holt v. Sullivan*,
921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*,
782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh Circuit
Court of Appeals has also held that the determination of whether
objective medical impairments could reasonably be expected to
produce the pain was a factual question to be made by the
Secretary and, therefore, "subject only to limited review in the
courts to ensure that the finding is supported by substantial
evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.),
*vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated
sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986).

Furthermore, the Social Security regulations specifically
state the following:

> statements about your pain or other symptoms
> will not alone establish that you
> are disabled; there must be medical signs and
> laboratory findings which show that you have
> a medical impairment(s) which could

29

> reasonably be expected to produce the pain
> or other symptoms alleged and which, when
> considered with all of the other evidence
> (including statements about the intensity
> and persistence of your pain or other
> symptoms which may reasonably be accepted as
> consistent with the medical signs and
> laboratory findings), would lead to a
> conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2012).

The ALJ found that Carter's medical impairments could be expected to cause the symptoms she claimed, but not to the extent asserted (Tr. 18, 20).  The ALJ further stated, however, that the objective medical evidence did not support the level of dysfunction she claimed. (Tr. 20).

The Court finds substantial support for the ALJ's conclusion.  While MRI studies show that Plaintiff has degenerative disc disease and arthritis, the impairments were characterized as mild.  Dr. Cartia stated that Carter's complaints were out of proportion to what could be expected based on the objective medical evidence.  The Court also notes that Dr. Szymoniak indicated that Plaintiff was capable of working, even though the ALJ found that she was not as limited as the doctor had suggested.  The Court finds that the ALJ properly considered Carter's complaints of pain and correctly found that they were not supported by the evidence of record.

Plaintiff next claims that the ALJ did not consider the combination of her impairments as she is required to do (Doc. 15, p. 16).  It is true that "the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. § 423(d)(2)C).  The Eleventh Circuit Court of Appeals has noted this instruction and further found that "[i]t is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984); *see also Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984); *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

In the ALJ's findings, she lists Plaintiff's impairments and goes on to find that she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" (Tr. 16).  This specific language has been upheld by the Eleventh Circuit Court of Appeals as sufficient consideration of the effects of the combinations of a claimant's impairments.  *Jones v. Department of Health and Human Services*,

31

941 F.2d 1529, 1533 (11th Cir. 1991) (the claimant does not have
"an impairment or combination of impairments listed in, or
medically equal to one listed in Appendix 1, Subpart P,
Regulations No. 4").  Carter's claim otherwise is without merit.

Finally, Plaintiff asserts that the ALJ should have ordered
consultative examinations.  Carter asserts that the extra
examinations were needed because the ALJ rejected the
conclusions of Drs. Vanlandingham and Szymoniak and Psychologist
DeFrancisco (Doc. 15, p. 15).

The Court finds no basis for this claim.  The opinions of
these medical providers were rejected because they were not
supported by the evidence of record; the opinions of
Vanlandingham and DeFrancisco were not even consistent with the
medical notes of their authors.

But, more to the point, there are nearly three hundred
pages of medical evidence provided in this record.  More
opinions are not needed; what is needed is medical evidence that
supports Carter's claim of disability.  This claim is without
merit.

Plaintiff has raised four different claims in bringing this
action.  All are without merit.  Upon consideration of the
entire record, the Court finds "such relevant evidence as a

32

reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 28th day of August, 2012.


                              s/BERT W. MILLING, JR.
                              UNITED STATES MAGISTRATE JUDGE